NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

SEP 24 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEFF N. ROSE, | No. 17-15009 |
| Petitioner-Appellant, | D.C. No. 3:13-cv-00267-MMD-WGC |
| v. | |
| RENEE BAKER, Warden; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | MEMORANDUM* |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued April 9, 2018
Submitted September 24, 2019
San Francisco, California

Before: WARDLAW and CLIFTON, Circuit Judges, and KATZMANN,** Judge.

Jeff Rose appeals the district court's denial of his 28 U.S.C. § 2254 habeas

corpus petition. We have jurisdiction under 28 U.S.C. §§ 1291, 2253 and review

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

the district court's denial of Rose's petition de novo. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). We affirm in part and reverse in part.

1. Rose claims that the Nevada Supreme Court's holding, without reasoning, that the admission of polygrapher Gordon Moore's testimony about Rose's false admissions during his polygraph exam and a selective transcript of the exam did not violate his due process right to a fair trial was contrary to or an unreasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). Although the district court denied this claim, it certified the claim for appellate review. We conduct an independent review of the record. *See Greene v. Lambert*, 288 F.3d 1081, 1088-89 (9th Cir. 2002). We affirm.

A defendant is deprived due process of law if he is denied "a fair hearing and a reliable determination on the issue of voluntariness" of an admission. *Jackson v. Denno*, 378 U.S. 368, 377 (1964).

Although Rose received such a hearing, he claimed it was "aborted" and "neither 'fair' nor a 'reliable determination.'" It is not enough, however, for Rose to point to shortcomings in the state court procedures used to decide the issue of voluntariness. *Procunier v. Atchley*, 400 U.S. 446, 451 (1971). Rose must "also show that his version of events, if true, would require the conclusion that his confession was involuntary." *Id.* Even if the hearing were procedurally deficient as alleged, we conclude it would not have been unreasonable for the Nevada

2

Supreme Court to have determined that Rose voluntarily made the false admissions to Moore.

Moore read Rose his *Miranda* warnings, advised Rose that he was free to leave at any time, and had Rose sign a document indicating he understood his rights. Rose voluntarily drove himself to the building where the questioning took place, he was not handcuffed or placed under arrest immediately before or after the questioning, he was never physically threatened or harmed, and there is little indication that the questioning rose to the level of improper psychological pressure. Giving deference to the factual findings of the trial judge, who had presided over Rose's first trial, the Nevada Supreme Court could have reasonably concluded Rose voluntarily made the statements to Moore.

Rose additionally claimed that even if the admissions to Moore were voluntary, the trial court deprived him of "a meaningful opportunity to present a complete defense" when it prohibited him from explaining that these false admissions were made in an attempt to explain the purported results of a failed polygraph examination. We conclude this argument has not been exhausted because Rose failed to provide Nevada state courts with notice or a "fair opportunity" to address this federal constitutional claim. *Castillo v. McFadden*, 399 F.3d 993, 998–99 (9th Cir. 2005); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). We cannot grant habeas relief on an unexhausted

3

claim. 28 U.S.C. § 2254(b)(1)(A).[1]

2. Rose additionally argued that the Nevada Supreme Court's decision upholding an order by the trial court that excluded all evidence relating to other accusers or the results of the first trial was contrary to or an unreasonable application of federal law. The district court did not certify this claim for appeal, but Rose presented arguments on this and other uncertified claims in his opening brief, and we ordered the parties to brief those issues on the merits. We construe Rose's arguments as a motion to expand the certificate of appealability (COA). *See* 9th Cir. R. 22-1(e). Because Rose "has made a substantial showing of the denial of a constitutional right," we grant a COA as to claim one of his amended federal habeas petition. 28 U.S.C. 2253(c)(2); *see also Buck v. Davis*, 137 S. Ct. 759, 773 (2017). We reverse the judgment of the district court and remand with instructions to conditionally grant the writ of habeas corpus pending a new trial.

Just prior to trial, the court ruled that "neither the State nor the Defense is going to be able to bring in any evidence of any prior trial, any acquittal, any other

---

[1] Even if the argument were exhausted, it is a nonstarter because, as Rose conceded, he "never sought to admit the purported results of the test," even in the alternative. Rose's statements to Moore were admissible to show Rose's attempts to explain the victims' allegations, and the admission of the statements was not prohibited by clearly established federal law. The allegedly excluded evidence that would have put Moore's testimony into context, the polygraph evidence, was the evidence that Rose himself fought to exclude.

victims," even in the context of cross-examining his accusers. Rose contended this ruling gutted his intended defense theory and violated his constitutional right to "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (citations omitted). An evidentiary ruling abridges this right if it is "'arbitrary' or 'disproportionate to the purposes they are designed to serve[,]' . . . [and] it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 US. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987).

A.C.'s and C.C.'s testimonies were "central, indeed crucial, to the prosecution's case." *Olden v. Kentucky*, 488 U.S. 227, 233 (1988) (per curiam). A.C. testified she saw Rose molest C.C., yet she had previously stated to a detective that Rose molested other girls, all of whom were purportedly ready to testify otherwise. The trial court's limitation on the scope of Rose's cross-examination of A.C. prevented him from impeaching her on these similar accusations. Further, because Rose could not cross-examine A.C. and C.C. about their relationship with D.A. and other accusers or present evidence of his earlier

acquittals, Rose was unable to present the jury with a coherent narrative regarding the context in which the accusations arose. Because the trial court's ruling barred Rose from mentioning the other accusations for which he was acquitted, it also precluded him from introducing expert testimony that conversations between other accusers and A.C. and C.C. contained "sufficient indicators of suggestibility or taint which may render their statements unreliable."

We conclude the limits the trial court placed on the scope of Rose's cross-examination of A.C. and C.C. were disproportionate and beyond reason as "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination." *Id.* at 232 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)). Although there was a risk that a focus on the results and accusations from the first trial could confuse the jury in the second trial, the trial court could have mitigated this concern with a narrower ruling.[2] The overly broad evidentiary ruling was not harmless as demonstrated by the hung jury in the first trial, during which the charges relating to C.C. were placed in context.

---

[2] *Nevada v. Jackson*, 569 U.S. 505 (2013), on which the state relies, is distinguishable. Unlike Rose, the defendant in *Jackson* was given "wide latitude to cross-examine" his accusers. *Id.* at 507; *see id.* at 511–12 (criticizing this court for "elid[ing] the distinction between cross-examination and extrinsic evidence").

Because the limits the trial court placed on the scope of Rose's cross-examination denied him a "meaningful opportunity to present a complete defense," *Crane*, 476 U.S. at 690, we conclude the Nevada Supreme Court's decision upholding it was contrary to clearly established federal law. We accordingly reverse the district court on this issue and remand with instructions to grant the writ pending a new trial.

3. We have carefully examined the remaining two uncertified issues and conclude Rose has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). We accordingly deny Rose's request to certify his two remaining uncertified claims.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED with instructions to conditionally grant the writ pending a new trial.**